```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Mark B. Galvin and
Jenny Galvin

    v.                                    Case No. 15-cv-386-JL

Specialized Loan
Servicing LLC

### REPORT AND RECOMMENDATION

In a case that has been removed from the Rockingham County Superior Court, Mark and Jenny Galvin seek to enjoin Specialized Loan Servicing LLC ("SLS") from foreclosing on their mortgage. Before this magistrate judge for a report and recommendation is plaintiffs' motion to disqualify defendant's counsel, Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins"), due to a purported conflict of interest based upon plaintiffs' assertion that a partner in Nelson Mullins once represented Mark Galvin ("Galvin").  Defendant objects.  For the reasons that follow, plaintiffs' motion should be denied.

### The Legal Standard

The United States Code provides that "all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business."  28 U.S.C. § 2701(a).

"With respect to issues such as conflict of interest, 'the district court is vested with the power and responsibility of supervising the professional conduct of attorneys appearing before it.'"  United States v. Gingras, No. CR. 02-47-1-M, 2002 WL 31106609, at *3 (D.N.H. Sept. 23, 2002) (quoting Kevlik v. Goldstein, 724 F.2d 844, 847 (1st Cir. 1984)).  Under the authority described above, this court has prescribed rules for the conduct of its business.  Those rules provide, in pertinent part:

> The Standards for Professional Conduct adopted by this court are the Rules of Professional Conduct as adopted by the New Hampshire Supreme Court, as the same may from time to time be amended by that court, and any standards of conduct set forth in these rules.

LR 83.5, DR-1.

With respect to the duties that attorneys owe their former clients, the New Hampshire Rules of Professional Conduct provide, in pertinent part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

N.H. R. Prof. Conduct 1.9(a).  In Goodrich v. Goodrich, the New Hampshire Supreme Court ("NHSC") described the purpose of Rule 1.9(a) this way:

2

>     The rule of disqualification is designed to protect "a client's secrets and confidences by preventing even the possibility that they will subsequently be used against the client in related litigation." Tekni-Plex, Inc. v. Meyner and Landis, 674 N.E.2d 663, 667 ([N.Y.] 1996). Disqualification, however, "conflicts with the general policy favoring a party's right to representation by counsel of choice, and it deprives current clients of an attorney familiar with the particular matter." Id.; see also McElroy v. Gaffney, 129 N.H. 382, 390 (1987). We must, therefore, seek to ensure that the trust and loyalty owed by lawyers to their clients are not compromised, while preserving the ability of clients to freely engage counsel of their choice. See, e.g., Ramada Franchise v. Hotel of Gainesville, 988 F. Supp. 1460, 1463-64 (N.D. Ga. 1997); Federal Deposit Ins. Corp. v. Amundson, 682 F. Supp. 981, 985 (D. Minn. 1988); In re I Successor Corp., 321 B.R. 640, 647 (Bankr. S.D.N.Y. 2005).

158 N.H. 130, 136 (2008) (parallel citations omitted).

As for the application of Rule 1.9(a) in the context of a motion to disqualify opposing counsel, the NHSC has explained:

> We have established the following test under Rule 1.9(a) to determine whether a disqualifying conflict of interest exists:
>
>> First, there must have been a valid attorney-client relationship between the attorney and the former client. Second the interests of the present and former clients must be materially adverse. Third, the former client must not have consented, in an informed manner, to the new representation. Finally, the current matter and the former matter must be the same or substantially related.
>
> Sullivan Cnty. [Reg'l Refuse Disposal Dist. v. Town of Acworth,] 141 N.H. [479,] 481-82 [(1996)] (citations omitted) (decided under former version). "[U]pon a

3

> finding that all of the elements of [former] Rule 1.9 have been satisfied, a court must irrebuttably presume that the attorney acquired confidential information in the former representation." Id. at 483. "Disqualification then becomes mandatory." Id.

Goodrich, 158 N.H. at 135-36 (2008).

As for the burdens and presumptions associated with the Rule 1.9(a) test, the NHSC does not appear to have spoken. But, owing to the general paucity of Rule 1.9(a) jurisprudence in New Hampshire, see Goodrich, 158 N.H. at 137, the NHSC has explained that it will "look to decisions of other jurisdictions for guidance," id.; see also Sullivan Cty., 141 N.H. at 481. Other jurisdictions, in turn, appear to be uniform in assigning the burden of demonstrating a conflict to the party seeking to disqualify opposing counsel. In Sullivan County, the NHSC relied upon no fewer than three out-of-state decisions that stand for that proposition. See Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1384 (10th Cir. 1994); Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo, 144 F.R.D. 235, 238 (D.N.J. 1992); Kevlik, 724 F.2d at 851 (quoting T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F. Supp. 265, 268 (S.D.N.Y. 1953)). Based upon the decisions the NHSC relied on in Sullivan County, this court concludes that plaintiffs bear the burden of establishing all four elements of the Rule 1.9(a) disqualification test.

4

**Background**

Unless otherwise indicated, the facts recited in this section are drawn from: (1) plaintiffs' memorandum of law; and (2) the affidavits attached to defendant's objection. While defendant has pointed out that plaintiffs' motion and their original memorandum of law do not comply with LR 7.1(a)(2), the court assumes, for the purpose of ruling on plaintiffs' motion, that the affidavit attached to their reply brief is sufficient to satisfy LR 7.1(a)(2).[1]

In this action, plaintiffs ask the court to enjoin defendant from foreclosing on a mortgage they gave to secure the repayment of a promissory note that Galvin executed. Legally, plaintiffs base their request for relief upon N.H. Rev. Stat. Ann. § 479:25, II, and 12 C.F.R. § 1024, et seq. The promissory note underlying the mortgage in this case was executed in 2005. See Galvin v. EMC Mortg. Corp., No. 12-cv-320-JL, 2014 WL 4980905, at *1 (D.N.H. Oct. 3, 2014).

---

[1] That said, plaintiffs would be well advised, in the future, to make sure that their filings comply with both the applicable Federal Rules of Civil Procedure and the Local Rules of this court. Moreover, while Mark Galvin may represent himself in this case, he may not, as a non-lawyer, represent his wife Jenny. See Katz v. McVeigh, 931 F. Supp. 2d 311, 333 (D.N.H. 2013) (citing Herrera-Venegas v. Sanchez-Rivera, 681 F.2d 41, 42 (1st Cir. 1982); O'Diah v. Volkswagen of Am., Inc., 91 F. App'x 159, 160 (1st Cir. 2004)).

Defendant is represented by Nelson Mullins. Attorney James P. O'Hare is a partner in Nelson Mullins. From 1992 through 1996, while he was a partner in a different law firm, Atty. O'Hare served as corporate counsel to Primary Rate, Inc. and RAScom. Galvin describes Primary Rate and RAScom as "Mark Galvin's companies." Pls.' Mot. for Disqual. (Doc. No. 6 at 3).

In his affidavit, O'Hare states: "Although in my role as corporate counsel I communicated with Mark Galvin, it is my recollection that I served only as counsel to the corporations, and did not additionally serve as counsel to Mark Galvin personally." Def.'s Obj., O'Hare Aff. (Doc. No. 8-2, ¶ 3). He also states: "Since approximately 1996, I have not represented Mark Galvin in any corporate capacity. Further, I have never discussed this lawsuit, or any claim related to this lawsuit, with Mark Galvin." Id. ¶ 7. Plaintiffs characterize the relationship this way:

> For a period of 4 years, Mr. O'Hare served as Corporate Counsel to two of Mark Galvin's companies: Primary Rate Inc. and RAScom. In that capacity, he also served as counsel to Plaintiff Galvin, personally, and also was the attorney who brought Primary Rate through a mercer with Xircom in 1995. . . . Mr. Galvin and Mr. O'Hare maintained a friendly and collaborative relationship since that time, such that Mr. Galvin contacted Mr. O'Hare [in 2010] seeking legal counsel when suit was filed against him relative

6

>       to another property that Mr. Galvin owned, a property
>       that had been purchased during the period of Mr.
>       O'Hare's representation of Mr. Galvin, and a property
>       that is the subject of an action that shares many
>       similarities with this suit.  As a result of that
>       call, during which much was discussed that related to
>       the subject matter of the present action including the
>       subjects of foreclosure, mortgage assignments and
>       servicing, chains of title, etc., Mr. O'Hare referred
>       Plaintiff Galvin to counsel who did in fact represent
>       him for a time in the other suit.

Pls.' Mot. for Disqual. (Doc. No. 6 at 3-4).[2]  As described in plaintiffs' motion, the asserted similarities between the 2010 suit and the present action appear to be exclusively legal, not factual.

## **Discussion**

Plaintiffs argue that: (1) pursuant to Rule 1.9(a) of the New Hampshire Rules of Professional Conduct, Atty. O'Hare is under a conflict of interest that bars him from representing SLS in this action; and (2) pursuant to Rule 1.10(a), Atty. O'Hare's conflict is imputed to the Nelson Mullins firm, including Attorney Keven Polanski, who has appeared for SLS in this case.

---

[2] While plaintiffs state that Galvin acquired the property that was the subject of the 2010 lawsuit "during the period of Mr. O'Hare's representation of Mr. Galvin," id. at 4, they do not assert that Atty. O'Hare played any role as a lawyer in either the acquisition of that property or Galvin's grant of a mortgage on it.

Atty. O'Hare's previous representation of Galvin does not create a disqualifying conflict of interest.

Turning to the four elements of the test for disqualification under Rule 1.9(a), plaintiffs have established the second and third ones.  Their interests are materially adverse to the interests of SPS, and Galvin has not consented to Nelson Mullins' representation of SPS in this matter.[3]

The first element of the test, however, is not so clearly established.  The parties disagree as to whether Atty. O'Hare was ever Galvin's personal counsel.  Regarding the period from 1992 through 1996, when Atty. O'Hare was corporate counsel to two of Galvin's companies, the only legal matter plaintiffs specifically identify as one on which Atty. O'Hare worked was a corporate matter, i.e., the merger of Primary Rate and Xircom. That is, while plaintiffs speak of Atty. O'Hare and Galvin as being "attached at the hip," Pls.' Mot. for Disqual. (Doc. No. 6 at 5), in the 1990s, they do not identify any particular legal matter that Atty. O'Hare handed while acting as personal counsel for Galvin during that time frame.  On the other hand, they do

---

[3] Jenny Galvin has not consented either, but plaintiffs do not claim that Jenny ever had an attorney-client relationship with Atty. O'Hare.  Thus, plaintiffs do not adequately assert that Jenny has any client confidences that would be protected by disqualifying Nelson Mullins.

say that in 2010, Galvin approached Atty. O'Hare for legal advice concerning a "suit [that was] filed against him relative to another property that Mr. Galvin owned." Id. at 4. While the evidence is not strong on this point, the court will assume, for purposes of ruling on plaintiffs' motion, that an attorney-client relationship existed between Galvin and Attorney O'Hare in the mid 1990s and again in 2010.

The problem is that plaintiffs have not established the fourth element of the Rule 1.9(a) test, i.e., that the matter in which Nelson Mullins currently represents SPS is the same as or substantially related to any matter in which Atty. O'Hare has ever represented Galvin individually or plaintiffs collectively. The court begins by describing the substantial-relationship requirement and then considers, in turn, Galvin's relationship with Atty. O'Hare in the 1990s and his relationship with Atty. O'Hare in 2010.

A. "Substantially Related"

The American Bar Association comments on Rule 1.9(a), reproduced in the New Hampshire Rules of Professional Conduct, describe the substantial-relationship requirement this way:

> Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would

>           normally have been obtained in the prior
>           representation would materially advance the client's
>           position in the subsequent matter.

N.H. R. Prof. Conduct 1.9(a), 2004 ABA Model Code cmt. [3] (emphasis added).

### B. 1990s

With respect to his relationship with Atty. O'Hare in the 1990s, Galvin focuses upon: (1) one specific non-litigation matter, the merger of Primary Rate and Xircom; and (2) Atty. O'Hare's role as a general legal confidante.  The merger of Prime Rate and Xircom that Atty. O'Hare helped facilitate in the 1990s is not the same transaction as the dispute in this case, which involves plaintiffs' attempt to stave off the foreclosure of their mortgage.  Moreover, that 20-year-old merger is not substantially related to plaintiffs' attempt to avoid foreclosure.

The substantial-relationship test focusses on "whether facts which were necessary to the first representation are necessary to the present litigation."  U.S. Football League v. Nat'l Football League, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985).  Here, plaintiffs have identified no way in which any facts necessary to the accomplishment of a corporate merger in the mid 1990s, involving a company in which Galvin had an interest,

could possibly be necessary to defending against the foreclosure of a mortgage on a property that plaintiffs acquired in 2005. That is, plaintiffs have not pointed to any sort of "confidential factual information as would normally have been obtained in the [course of the merger of Prime Rate and Xircom that] would materially advance [SPS's] position" in defending against their claims in this action. N.H. R. Prof. Conduct 1.9(a), 2004 Model Code cmt. [3]. The same holds true for plaintiffs' characterization of Galvin's general relationship with Atty. O'Hare. "[G]eneral legal representation can be relevant to a later litigation, but only if the later litigation fairly puts in issue the entire background of the movant." Id. Plaintiffs, however, have identified no way in which the discrete legal issues in this case put in issue Galvin's "entire background." Id. In short, there is nothing in Atty. O'Hare's work for Primary Rate or RAScom and nothing in his purported role as a confidante to Galvin that would require, or even allow, the disqualification of Nelson Mullins from representing SPS in this case.

C. 2010

Plaintiffs also argue that Nelson Mullins must be disqualified because of Galvin's communication(s) with Atty.

11

O'Hare in 2010 in connection with a "suit filed against [Galvin] relative to another property that had been purchased during the period of Mr. O'Hare's representation of Mr. Galvin." Pls.' Mot. for Disqual. (Doc. No. 6 at 4). According to plaintiffs, "much was discussed that related to the subject matter of the present action including the subjects of foreclosure, mortgage assignments and servicing, chains of title, etc." Id. The legal content of any such discussions is beside the point; it is the possibility that a former client's confidential factual information could be used against him or her that triggers an attorney's obligations under Rule 1.9(a). See Goodrich, 158 N.H. at 136.

According to the ABA comments on the Model Code reported in the New Hampshire Rules of Professional Conduct,

> a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.

N.H. R. Prof. Conduct 1.9(a), 2004 ABA Model Code cmt. [2] (emphasis added). As Judge Leisure explained in U.S. Football League, where "the prior representation involved litigation," 605 F. Supp. at 1459, such as the suit that prompted Galvin to contact Atty. O'Hare in 2010, "if the facts giving rise to an

issue which is material in both the former and the present litigations are as a practical matter the same, then there is a 'substantial relationship' between the representations for the purposes of a disqualification motion," id. (emphasis added).

Here, assuming that the 2010 conversation(s) between Atty. O'Hare and Galvin qualify as representation for the purpose of disqualification, the 2010 foreclosure and the foreclosure that plaintiffs seek to avoid are actually distinct problems. They involve different properties and different mortgages. More specifically, and in relation to the alleged topics of discussion between Galvin and Atty. O'Hare, as described in plaintiffs' motion, the two legal actions involve: (1) different foreclosures on different mortgages; (2) different histories of assignment and servicing; and (3) different chains of title. In other words, the facts that gave rise to the 2010 action against Galvin are not the facts giving rise to plaintiffs' current action against SPS, which is the test for whether the two actions are substantially related. See U.S. Football League, 605 F. Supp. at 1459.

The 2010 suit against Galvin and plaintiffs' current action against SPS may share legal similarities, but plaintiffs have identified no material facts that are common to the two

13

litigations and, as a consequence, no client confidences from the first action that could be used against them in the second one.  Thus, the two lawsuits are not substantially related for the purposes of Rule 1.9(a).  Accordingly, there is nothing about Galvin's consultation with Atty. O'Hare in 2010 that would require, or even allow, the disqualification of Nelson Mullins from representing SPS in this case.

The court concludes by focusing, briefly, on Walton v. Chase Home Finance LLP, No. 1:11-cv-00417-JMS-MJD, 2012 WL 1409609 (S.D. Ind. Apr. 23, 2012), a decision that provides a useful perspective on the question before this court.  In Walton, a mortgagor sued her mortgagee alleging violations of various state and federal statutes.  See id. at *1.  The plaintiff then moved to disqualify the defendant's counsel, on grounds that the defendant's current counsel had previously represented her in a matter involving easements on the mortgaged property that ran in favor of her homeowners association.  Id.

While the Walton defendant's attorney's prior representation of the plaintiff involved the same real estate that was encumbered by the mortgage at issue in the subsequent case, see 2012 WL 1409609, at *3, the court denied the plaintiff's motion to disqualify the defendant's counsel.  Among

14

other things, the court based its decision upon its conclusion that the attorney the plaintiff sought to disqualify could not possibly have gained access to confidential information in the first matter that was relevant to the second matter.  See id. at *4.  If two matters involving the same property do not share a sufficient factual basis to require disqualification, it is difficult to imagine that two matters involving different properties and different legal encumbrances could possibly share factual similarities that would require disqualification.  Thus, Walton supports the denial of plaintiffs' motion for disqualification.

## Conclusion

For the reasons detailed above, the court recommends that plaintiffs' motion to disqualify defendant's counsel, doc. no. 6, be denied.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                _____
                                                Andrea K. Johnstone
                                                United States Magistrate Judge

December 9, 2015

cc:  Mark Galvin, pro se
     Jenny Galvin, pro se
     Kevin Polansky, Esq.